IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| WDC ACQUISITION LLC, | ) | Case No. 4:23-cv-00481-SMR-WPK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON DEFENDANT'S MOTION |
| v. | ) | TO DISMISS AND MOTION FOR |
| | ) | JUDGMENT ON THE PLEADINGS |
| ARKEMA INC., | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff WDC Acquisition LLC ("WDC") asserts federal environmental law claims against Defendant Arkema Inc. ("Arkema") for contamination at a property in Creston, Iowa (the "Site").  WDC purchased the Site in connection with a bankruptcy proceeding.  [ECF No. 93].  Arkema previously owned the Site, and its corporate predecessors allegedly dumped hazardous materials there in the mid-20th century.[1]  Arkema now moves for judgment on the pleadings and to dismiss the federal environmental law claims.  [ECF No. 96].

## I.    BACKGROUND[2]

WDC acquired the Site through an asset purchase approved by a bankruptcy court in 2018.  [ECF No. 93 ¶ 6].  As part of this purchase, WDC received an assignment of the environmental claims from Wellman Dynamics Corporation and assumed ongoing environmental responsibilities

---

[1] The Court will use "Arkema" to refer to the corporate entity that is the Defendant in this case, as well as its corporate predecessors.

[2] These facts are drawn from the first amended complaint and are presumed true for purposes of a motion for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014).

to the United States Environmental Protection Agency ("EPA") and the Iowa Department of Natural Resources.  *Id.*

WDC alleges that hazardous substances have been released, or threaten release, at the Site. *Id.* ¶ 21.  Hills McCanna Company ("Hills McCanna") owned and operated the Site from 1965 to 1967.  *Id.* ¶ 7.  During this time, a variety of hazardous materials—including radioactive source material, waste acids, chlorinated solvents, wastewater treatment sludge, and heavy metals and foundry wastes—were released into the soil and groundwater at the Site.  *Id.*  In 1967, Wallace & Tiernan, Inc. acquired Hills McCanna, and the release of hazardous materials continued.  *Id.* ¶ 8. In 1969, Wallace & Tiernan, Inc. merged with another corporation to form Pennwalt Corporation ("Pennwalt"), and operations releasing hazardous materials persisted.  *Id.* ¶¶ 9–10.

From 1970 to 1976, operators buried radioactive wastes from specialty castings manufactured at the Site.  *Id.* ¶ 10.  These buried wastes are subject to regulation by the Iowa Department of Public Health and require off-site management and decommissioning.  *Id.*  An industrial waste landfill at the Site was also used for disposal of foundry sand, baghouse dust, and treated magnesium dross wastes.  *Id.*  Following another merger and several name changes, Pennwalt eventually became Arkema.  *Id.* ¶¶ 11–14.

WDC brings claims against Arkema for cost recovery and contribution under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").[3]  *Id.* ¶¶ 17–26, 27–37.  WDC also asserts a claim under the citizen's suit provision of the Resource Conservation and Recovery Act ("RCRA").  *Id.* ¶¶ 38–42.  Arkema moves for judgment on the pleadings on the CERCLA claims and to dismiss the RCRA claim.  [ECF No. 96].

---

[3] The relevant CERCLA statutes at issue in this case are codified at 42 U.S.C. §§ 9606, 9607, and 9613.  These statutory provisions are also referenced by the Court and the parties as CERCLA §§ 106, 107, and 113, respectively.

## II.    DISCUSSION

### A.  Legal Standard

Arkema brings a Rule 12(b)(6) motion to dismiss WDC's RCRA claim.  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint is not adequately pled if it contains "'naked assertions devoid of further factual enhancement.'"  *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).  Nor is a complaint sufficient if a plaintiff predicates entitlement to relief on factual pleadings that merely state "labels and conclusions."  *Twombly*, 550 U.S. at 555.

A court must accept as true all facts pled in the complaint and grant all reasonable inferences drawn from the pleadings in favor of the nonmovant.  *Bushner*, 33 F.4th at 499 (citation omitted).  Courts may also consider "[d]ocuments necessarily embraced by the pleadings," such as those "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation omitted).

Under Rule 8, a plaintiff need only set forth a "short and plain statement of the claim" with sufficient facts "showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  To survive a Rule 12(b)(6) motion to dismiss, the alleged facts "must be enough to raise a right to relief above the speculative level" by presenting claims that are facially plausible.  *Twombly*, 550 U.S. at 555 (citation omitted).  This plausibility standard requires that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Bushner*, 33 F.4th at 499 (quoting *Iqbal*, 556 U.S. at 678).  "Specific facts are not

necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (cleaned up) (quoting *Twombly*, 550 U.S. at 555). However, a complaint "must be dismissed" when the factual allegations, regardless of their veracity, "could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 570.

Arkema also brings a Rule 12(c) motion for judgment on the pleadings regarding the CERCLA claims. A Rule 12(c) motion for judgment on the pleadings imposes the same legal standard as a Rule 12(b)(6) motion to dismiss. *Nat'l Union Fire Ins. of Pittsburgh v. Cargill, Inc.*, 61 F.4th 615, 619 (8th Cir. 2023).

"Judgment on the pleadings is available when, 'viewing all facts pleaded by the nonmoving party as true and granting all reasonable inferences in favor of that party, no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law.'" *Hartford Fire Ins. v. Chubb Custom Ins.*, 142 F.4th 624, 626 (8th Cir. 2025) (quoting *United States v. Hamed*, 976 F.3d 825, 828 (8th Cir. 2020)). When ruling on such a motion, courts generally review only the pleadings, though they may also examine matters of public records, materials that do not conflict with the complaint, and documents necessarily embraced by the pleadings. *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

### B. RCRA Citizen Suit Claim

#### 1. Legal Standard

The RCRA "is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996). The statute aims to reduce hazardous waste generation and to ensure the "proper treatment, storage,

and disposal of waste" that is nonetheless generated "so as to minimize the present and future threat to human health and the environment." *Id.* (quoting 42 U.S.C. § 6902(b)).

The RCRA contains a private right of action permitting any person to "commence a civil action" against anyone "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). To establish a claim under the RCRA's citizen suit provision, plaintiffs must show three elements: (1) conditions that "'may present an imminent and substantial endangerment to health or the environment,' (2) the endangerment stems from the 'past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste,' and (3) the defendant contributed or is contributing to such 'handling, storage, treatment, transportation, or disposal.'" *Short Creek Dev., LLC v. MFA Inc.*, Case No. 22-05021-CV-SW-WBG, 2022 WL 2881412, at *2 (W.D. Mo. July 21, 2022) (quoting 42 U.S.C. § 6972(a)(1)(B)); *see also United States v. Aceto Agric. Chems. Corp.*, 872 F.2d 1373, 1382 n.9 (8th Cir. 1989) (discussing the elements of an RCRA claim).

There are two remedies available under the RCRA's citizen suit provision: (1) a mandatory injunction ordering "a responsible party to 'take action' by attending to the cleanup and proper disposal of toxic waste" and (2) a prohibitory injunction restraining "a responsible party from further violating RCRA." *Meghrig*, 516 U.S. at 484; *see also* 42 U.S.C. 6972(a)(1)(A)–(B). The RCRA does not permit parties to seek compensation for past cleanup efforts; it is "designed to provide a remedy that ameliorates present or obviates the risk of future 'imminent' harms." *Meghrig*, 516 U.S. at 484–86; *see also Garrison v. New Fashion Pork LLP*, 449 F. Supp. 3d 863,

871 (N.D. Iowa 2020) (holding that a plaintiff must allege a "current and ongoing" RCRA violation to state a claim for relief) (citation omitted).

2.   Analysis

Arkema asserts that the RCRA claim fails for two reasons.  First, Arkema contends that WDC failed to plead an imminent and substantial endangerment to health or the environment because it does not allege facts to draw such an inference.  [ECF No. 96].  Second, Arkema argues that the Court should grant its motion because a judicially approved settlement agreement obligates WDC to perform the work it seeks from Arkema.  *Id.*

The Court concludes that WDC failed to sufficiently plead an RCRA claim under Section 6972(a)(1)(B) because the first amended complaint does not contain factual allegations that an imminent and substantial endangerment to health or the environment exists.

In the first amended complaint, WDC alleges that Arkema's corporate predecessors "contributed to the past or present handling, storage, treatment, transportation, or disposal of solid waste or hazardous waste at the Site."  [ECF No. 93 ¶ 40].  Hills McCanna did so by dumping hazardous substances such as radioactive source material, waste acids, chlorinated solvents, wastewater treatment sludge, and foundry wastes into the soil and groundwater at the Site.  *Id.* ¶ 7. Pennwalt similarly buried "thorium-containing wastes from specialty castings" at the Site and used an on-site industrial waste landfill "for disposal of waste streams from operations at the Site."  *Id.* ¶ 10.  Because this hazardous waste infiltrated the soil and groundwater, WDC alleges that there continues to be a "threat of release of hazardous substances to the environment" and "hazardous waste at the Site which may present an imminent and substantial endangerment to health or the environment."  *Id.* ¶¶ 1, 40.

Ordinarily, the determination of whether a substantial and imminent danger exists presents a question of fact not properly resolved at the pleading stage. *Short Creek Dev.*, 2022 WL 2881412, at *4; *see also Substation K, Inc. v. Kan. City Power & Light Co.*, No. 19-00031-SRB, 2020 WL 3039127, at *4 (W.D. Mo. June 5, 2020) (explaining that such questions are not appropriately resolved on a motion to dismiss for failure to state a claim) (citation omitted); *Raytheon v. McGraw-Edison Co.*, 979 F. Supp. 858, 862 (E.D. Wis. 1997) (stating that plaintiff presented a question of fact that cannot be resolved by a Rule 12(b)(6) motion).

Nonetheless, this general principle does not relieve WDC of its obligation to allege facts establishing the elements of an RCRA claim, rather than merely "threadbare recitals of the elements of a cause of action." *Jones v. City of St. Louis*, 104 F.4th 1043, 1046 (8th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678).

Under the RCRA, an "imminent and substantial endangerment" exists when "there is 'a threat which is present *now*' and that 'the potential for harm is great.'" *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150–51 (8th Cir. 1999) (emphasis in original) (citation omitted); *see also Garrison*, 449 F. Supp. 3d at 870 ("A harm is imminent if it threatens to occur immediately."). This "excludes waste that no longer presents such a danger," however, the actual harm need not be currently felt. *Garrison*, 449 F. Supp. 3d at 870–71 (quoting *Meghrig*, 516 U.S. at 486). This broad standard encompasses "*any risk* posed by toxic wastes." *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 210 (2d Cir. 2009) (citation omitted) (emphasis in original). As such, decades-old hazardous waste may pose a danger imminent and substantial enough to survive a Rule 12(b)(6) motion. *See, e.g.*, *Short Creek Dev.*, 2022 WL 2881412, at *1, 3–4; *United States v. Reilly Tar & Chem. Corp.*, 546 F. Supp. 1100, 1110 (D. Minn. 1982).

Drawing all reasonable inferences in favor of WDC, the first amended complaint alleges that Arkema contributed to hazardous waste that threatens release, but fails to allege how this waste endangers health or the environment.  Specifically, the first amended complaint directly links the hazardous waste at the Site with a threat of a release "which is present *now*." *Petrovic*, 200 F.3d at 1151 (emphasis in original) (quoting *Price v. United States Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994)).  However, WDC fails to allege facts demonstrating that the release, or threatened release, of this waste endangers health or the environment.  Without such an allegation, the first amended complaint fails to state a claim upon which relief can be granted.  *See Talarico Bros. Building Corp. v. Union Carbide Corp.*, 73 F.4th 126, 140 (2d Cir. 2023); *Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc.*, 471 F.3d 277, 282 (1st Cir. 2006).

The United States Court of Appeals for the Second Circuit reached a similar conclusion in *Talarico Bros.*  73 F.4th at 141.  In that case, the plaintiff's repeated references to "'elevated' radiation levels" at a contaminated site were insufficient to survive a Rule 12(b)(6) motion because the court had no reference for what "elevated" meant.  *Id.* at 140.  As such, the plaintiff failed to plausibly allege that the radioactive materials at the site were dangerous because "the mere presence" of these materials was "plainly insufficient" to demonstrate endangerment.  *Id.* at 140–41 (citation omitted).  The First Circuit has reached the same conclusion, holding that "the mere presence" of hazardous waste "is alone not enough to constitute an imminent and substantial endangerment." *Me. People's All.*, 471 F.3d at 282 (citation omitted).

WDC's first amended complaint is even more conclusory than the complaint in *Talarico Bros.*  Without factual allegations demonstrating that a release or threatened release of hazardous waste presents a danger, the Court cannot conclude that WDC has stated an RCRA claim.  *Iqbal*,

556 U.S. at 678.  Nonetheless, this pleading deficiency may be remediable.  *See Talarico Bros.*, 73 F.4th at 141.  The Court thus dismisses the RCRA claim without prejudice.

### C.  CERCLA Cost-Recovery Claim

#### 1.  Legal Standard

Congress enacted CERCLA to address "the serious environmental and health risks posed by industrial pollution."  *Burlington N. & Santa Fe Ry. v. United States*, 556 U.S. 599, 602 (2009). It is "designed to promote the 'timely cleanup of hazardous waste sites' and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination."  *Id.* (quoting *Consol. Edison Co. of N.Y. v. UGI Util., Inc.*, 423 F.3d 90, 94 (2d Cir. 2005)).

CERCLA provides two causes of action.  Section 107(a)(4)(B) creates a private right of action for cost recovery that "allow[s] private parties to recover expenses associated with cleaning up contaminated sites."  *United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 131 (2007), *aff'g*, *Atl. Rsch. Corp. v. United States*, 459 F.3d 827 (8th Cir. 2006).  This statutory provision "permits a private party who has voluntarily incurred costs cleaning up a site for which it may be held liable to recover necessary response costs from another liable party through a direct recovery action." *Morrison Enters., LLC v. Dravo Corp.*, 638 F.3d 594, 602 (8th Cir. 2011).

CERCLA also features a "complementary" cause of action for contribution, § 113(f).  *Atl. Rsch.*, 551 U.S. at 138.  The two causes of action provide "clearly distinct" remedies that apply "to persons in different procedural circumstances."  *Id.* at 138–39 (citation omitted); *see also Morrison Enters.*, 638 F.3d at 603.  As such, CERCLA contains "a *right to cost recovery* in certain circumstances, § 107(a), and *separate rights to contribution* in other circumstances, §§ 113(f)(1), 113(f)(3)(B)."  *Atl. Rsch.*, 551 U.S. at 138 (emphasis in original) (quoting *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 163 (2004)).

A cost-recovery claim imposes liability on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of" for "necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(2), (a)(4)(B). To establish a CERCLA cost-recovery claim, a plaintiff must show (1) the defendant owned or operated a "facility," (2) a "release" or "threatened release" of a "hazardous substance" from the defendant has occurred, (3) "the release or threatened release" caused the plaintiff "to incur response costs" consistent with the national contingency plan, and (4) the defendant "falls within one of four classes of responsible people as set forth in 42 U.S.C. § 9607(a)." *Short Creek Dev.*, 2022 WL 2881412, at *4 (citing *Aceto Agric. Chems.*, 872 F.2d at 1378); *see also Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 934 (8th Cir. 1995) (discussing the elements of a CERCLA cost-recovery claim).

Cost recovery under § 107(a) is available only "to parties who have incurred necessary costs of response, but have neither been sued nor settled their liability under §§ 106 or 107" for those costs. *Morrison Enters.*, 638 F.3d at 603 (citation omitted); *see also ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452, 458 (6th Cir. 2007) (holding that parties who have "entered into a judicially or administratively approved settlement must seek contribution under § 113(f)" for those costs. Conversely, parties who have a viable recourse to relief under § 113 "cannot bring an action under § 107." *Morrison Enters.*, 638 F.3d at 604 (citation omitted).

## 2. Analysis

Arkema argues that WDC's cost-recovery claim fails for three reasons. First, WDC failed to plead that it incurred necessary response costs consistent with the national contingency plan. Second, WDC impermissibly seeks to recover costs not yet incurred. Third, WDC cannot pursue cost recovery under § 107(a) because the company settled its CERCLA liability with the EPA and

Iowa Department of Natural Resources.  Because WDC fails to make factual allegations regarding the response costs it has incurred or the consistency of those costs with the national contingency plan, the cost-recovery claim must be dismissed.

At the outset, the Court must first determine whether it may consider the environmental settlement agreement in ruling on Arkema's motion.  WDC contends that use of this document is improper at this stage of the litigation.  The Court disagrees for two reasons.

First, the settlement agreement is necessarily embraced by the pleadings.  Although courts generally may not consider "matters outside the pleading" in deciding a Rule 12 motion to dismiss, "documents necessarily embraced by the complaint are not matters outside the pleading." *Ashanti*, 666 F.3d at 1151 (citation omitted).  A document is "necessarily embraced by the pleadings" when its "contents are alleged in a complaint" and its authenticity is undisputed, even though it is "not physically attached to the pleading." *Id.* (citation omitted).  That is the case here.

In the first amended complaint, WDC expressly alleges that it assumed "ongoing U.S. EPA and Iowa Department of Natural Resources environmental responsibilities" at the Site.  [ECF No. 93 ¶ 6].  This is a direct reference to the content of the settlement agreement imposing certain environmental responsibilities on WDC.  WDC does not dispute the agreement's authenticity, so it is necessarily embraced by the pleadings. *Ashanti*, 666 F.3d at 1151.

Second, because the settlement agreement was filed in the prior bankruptcy proceedings, the Court may take judicial notice of it. *In re Wellman Dynamics Corp.*, 16-01825-als11, ECF No. 1228 (Bankr. S.D. Iowa June 8, 2020); *see also Owens v. Ocwen Fin. Corp.*, No. 23-1532, 2024 WL 242857, at *1 (8th Cir. Jan. 23, 2024) (per curiam) (taking judicial notice of filings in a prior action).  Further, it is a matter of public record that the Court may appropriately consider in

deciding this motion. *United States ex rel. Kraxberger v. Kan. City Power & Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014).

Turning to the content of the environmental settlement agreement, it is clear that it resolved "some or all" of WDC's CERCLA liability to the United States. 42 U.S.C. § 9613(f)(3)(B). Although other Courts of Appeal have recognized that this is ordinarily determined on a case-by-case basis, the settlement agreement clearly meets this standard. *See, e.g.*, *Bernstein v. Bankert*, 733 F.3d 190, 196, 213 (7th Cir. 2013).

The agreement was judicially approved by the United States Bankruptcy Court and executed in connection with WDC's purchase of the Site. [ECF No. 96-4 at 2]. Its express purpose was to "resolve certain environmental liabilities for existing contamination" at the Site. [ECF No. 96-3 at 5]. The "environmental liabilities" WDC resolved with the United States include CERCLA liabilities as the United States made a covenant "not to sue or take any other civil administrative action against [WDC] pursuant to . . . Sections 106 or 107 of CERCLA, 42 U.S.C. §§ 9606 or 9607, with respect to Existing Contamination" at the Site. *Id.* ¶ 15. This was subject only to WDC's compliance with environmental regulations and duties under an administrative consent order. *Id.* ¶¶ 4–10, 17(a)–(e). Thus, WDC's CERCLA liability was functionally resolved "by entering into and carrying out the terms of" the agreement. *Dravo Corp. v. Zuber*, 13 F.3d 1222, 1224 (8th Cir. 1994); *see also NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 692 (7th Cir. 2014).

Because WDC has resolved some or all of its CERCLA liability with the United States, it cannot pursue cost recovery under § 107(a) for the same costs it can recover in a § 113 contribution action. *See Morrison Enters.*, 638 F.3d at 604; *Whittaker Corp. v. United States*, 825 F.3d 1002, 1007 (9th Cir. 2016). Specifically, the settlement agreement—which triggers WDC's CERCLA

-12-

§ 113 contribution claim—imposed duties upon WDC to perform certain "obligations" mandated by relevant environmental laws, to discharge "financial assurance obligations," and to complete work at the Site as required by a prior administrative consent order. [ECF No. 94-3 ¶¶ 4, 12]. These obligations flatly contradict any claim that WDC voluntarily incurred these costs, and that they can be recovered in a § 107 action. *See Morrison Enters.*, 638 F.3d at 603 (quoting *Atl. Rsch.*, 459 F.3d at 835); *cf. Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 128 (2d Cir. 2010); *BorgWarner, Inc.*, 506 F.3d at 458.

WDC concedes that if it "has a claim to recover costs in contribution under Section 113 then it does not have a claim to recover those same costs under Section 107." [ECF No. 100 at 12]. However, WDC attempts to distinguish between costs it incurred under the settlement agreement and costs it voluntarily incurred outside the agreement. *Id.* at 13. It argues "this is a fact specific issue that requires discovery and cannot be resolved at the pleading stage." *Id.*

Eighth Circuit precedent does not expressly address the situation in which an entity incurs additional costs beyond the obligations imposed by a judicially approved settlement resolving a party's CERCLA liability. However, *Morrison Enterprises* implies that such costs are recoverable under CERCLA § 107. In that case, a plaintiff entered into an administrative consent order and consent decree with the EPA under which it agreed to take certain response actions to resolve its "potential liability for contamination at the Site under [CERCLA] §§ 106 and 107." *Morrison Enters.*, 638 F.3d at 599–600. When that plaintiff eventually brought a CERCLA cost-recovery action against another entity, the district court granted summary judgment for the defendant, holding that a § 113(f) contribution action provided the "exclusive remedy." *Id.* at 602.

On appeal, the plaintiff argued that the district court erred in dismissing the cost-recovery action because it had "voluntarily" cleaned up the contamination without any establishment of

liability. *Id.* at 604 (citation omitted). The Eighth Circuit rejected this argument, holding that costs incurred pursuant to administrative settlements requiring cleanup were not "incurred voluntarily." *Id.* (citing *Atl. Rsch.*, 555 U.S. at 139 n.6). Ultimately, the Eighth Circuit concluded that a CERCLA § 113 contribution action "provides the exclusive remedy for a liable party *compelled to incur* response costs *pursuant to* an administrative or judicially approved settlement." *Id.* at 603 (emphases added). In reaching this conclusion, the Eighth Circuit distinguished this holding from cases in which litigants had not "entered into administrative or judicially approved settlements within the meaning of § 113(f)." *Id.* at 605. This suggests that the holding of *Morrison Enterprises* is limited to costs incurred *pursuant to* administrative or judicially approved settlement that fall within the meaning of § 113(f) and that *Morrison Enterprises* does not foreclose a claim for recovery of costs incurred beyond the obligations of such an agreement.

Likewise, other courts routinely permit litigants to seek cost recovery under CERCLA § 107 when those costs differ from the costs the litigant must seek contribution for under CERCLA § 113(f). *See, e.g.*, *Whittaker*, 825 F.3d at 1013 (permitting an independent claim for cost recovery because the plaintiff sought "to recover expenses that are separate from those for which" its liability was established); *Bernstein*, 733 F.3d at 215 (permitting a plaintiff to bring both a cost-recovery claim and contribution claim for separate costs); *Agere Sys., Inc., v. Advanced Env't Tech. Corp.*, 602 F.3d 204, 225 (3d Cir. 2010) (permitting a plaintiff to bring a cost recovery action for expenses separate from which its liability had been established); *2121 Abbott Martin Partners, LLC v. Lee*, No. 3:18-cv-00683, 2019 WL 3818870, at *3 (M.D. Tenn. Aug. 14, 2019) (denying motion for judgment on the pleadings because case law only bars recovery for the same expenses). The Court agrees. Although it may seem unlikely that WDC has incurred costs beyond the obligations imposed by the settlement agreement, "a well-pleaded complaint may proceed even if

it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly,* 550 U.S. at 556 (citation omitted)).

Nonetheless, the cost-recovery claim must be dismissed because the complaint fails to include factual allegations regarding what costs WDC has incurred and the consistency of such costs with the national contingency plan. Although WDC is not required to plead specific facts, it must still plead more than just "threadbare recitals of the elements of a cause of action." *Iqbal,* 556 U.S. at 678. Here, WDC merely states an element of a cost-recovery claim as it alleges that it "has incurred response activity costs that are necessary and consistent with the National Contingency Plan as a result of the release or threatened release of hazardous substances at or from the Site." [ECF No. 93 ¶ 24]. This "naked assertion"—standing alone—does not suffice. *Iqbal,* 556 U.S. at 678 (citation omitted). The Court is unable to draw any reasonable inferences in favor of WDC because the complaint does not contain factual allegations regarding the response costs the company has incurred. This deficiency further prevents the Court from determining whether these costs were incurred pursuant to WDC obligations under the settlement agreement; a critical fact that directly bears upon the viability of the cost-recovery claim.

Other district courts routinely reach the same conclusion in similar circumstances. *See, e.g., Atl. Richfield Co. v. United States*, 181 F. Supp. 3d 898, 916 (D. N.M. 2016) (dismissing claim because plaintiff failed to explain "how or why the specific costs alleged in the Complaint were necessary to remediation"); *Ford Motor Co. v. Mich. Consol. Gas Co.*, No. 08-CV-13503-DT, 2010 WL 3419502, at *7 (E.D. Mich. Aug. 27, 2010) ("It is simply not enough to allege that MichCon incurred costs of response, without detailing *any* factual allegations in support of the statement; without alleging that the costs were necessary and explaining—even briefly—why they were necessary; or without otherwise enhancing the bare recitation of the element of a cost

recovery claim."); *City of Spokane v. Monsanto Co.*, 237 F. Supp. 3d 1086, 1095 (E.D. Wash. 2017) (dismissing claim because plaintiff failed "to plead sufficient facts plausibly showing that it has incurred or will incur costs that are necessary and consistent with the national contingency plan").

### D. CERCLA Claim for Contribution

#### 1. Legal Standard

CERCLA provides a cause of action for contribution in two instances.  First, "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title."  42 U.S.C. § 9613(f)(1).  Second, "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement" may seek contribution from "any person who is not party to [such] a settlement."  *Id.* § 9613(f)(3)(B); *see also Guam v. United States*, 593 U.S. 310, 320 (2021) ("[A] party may seek contribution under CERCLA only after settling a CERCLA-specific liability.").

In this context, "contribution" maintains its traditional meaning as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault."  *Morrison Enters.*, 638 F.3d at 603 (quoting *Atl. Rsch.*, 551 U.S. at 138).  A plaintiff seeking to recover on a CERCLA contribution claim must establish the defendant's liability under the same elements required to prove a CERCLA cost-recovery claim.  *Atl. Rsch.*, 459 F.3d at 831.

A contribution cause of action "provides the exclusive remedy for a liable party compelled to incur response costs pursuant to an administrative or judicially approved settlement under

§§ 106 or 107." *Morrison Enters.*, 638 F.3d at 603 (citing *Atl. Rsch.*, 459 F.3d at 830 n.4). "[P]arties which still have recourse to relief under § 113" cannot bring a cost-recovery action. *Id.* at 604. The right to contribution is thus more limited than the right to cost recovery. *Id.*

### 2.  Analysis

Arkema argues that WDC has failed to allege facts demonstrating that it resolved its CERCLA liability. Arkema's reliance on the environmental settlement agreement to defeat WDC's cost-recovery claim directly contradicts its argument on this point. Arkema cannot wield the settlement agreement as a sword to defeat WDC's cost-recovery claim, and then use it as a shield by disavowing its existence to defeat WDC's contribution claim.

As Arkema previously argued, the agreement resolved "some or all" of WDC's CERCLA liability with the United States. 42 U.S.C. § 9613(f)(3)(B). Although the agreement was not attached to the first amended complaint, the Court has considered the document—at Arkema's request—pursuant to the Court's authority to take judicial notice and because the agreement is necessarily embraced by the pleadings. As such, the Court concludes that WDC adequately pled that it settled a CERCLA-specific liability and is entitled to proceed on its contribution claim. *Guam*, 593 U.S. at 320; *see also Smithrud*, 746 F.3d at 397.

Beyond this threshold matter, Arkema does not contest the adequacy of WDC's contribution claim. The Court thus denies Arkema's motion on these grounds.

### III.  CONCLUSION

For the reasons discussed above, Arkema's motion to dismiss is GRANTED and Arkema's motion for judgment on the pleadings is GRANTED in part. [ECF No. 96]. WDC's RCRA claim and CERCLA cost-recovery claim are dismissed without prejudice. WDC may seek leave to amend. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

IT IS SO ORDERED.

Dated this 22nd day of October, 2025.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT